**0 7  CA 1 0 4 5 7 RGS**

FILED
IN CLERKS OFFICE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS** 2007 MAY -7 P 1:14

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| CHRISTOPHER MURPHY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LG PHILIPS LCD CO., LTD.; LG PHILIPS LCD AMERICA, INC.; SAMSUNG ELECTRONICS CO.,LTD.; NEC CORPORATION; NEC ELECTRONICS AMERICA, INC.; NEC LCD TECHNOLOGIES LTD.; HITACHI LTD.; HITACHI DISPLAYS, LTD.; HITACHI ELECTRONICS DEVICES (USA), INC.; HITACHI AMERICA LTD.; IDT INTERNATIONAL LTD.; INTERNATIONAL DISPLAY TECHNOLOGY CO., LTD.; INTERNATIONAL DISPLAY TECHNOLOGY USA INC.; SANYO EPSON IMAGING DEVICES CORPORATION; SHARP CORPORATION; SHARP ELECTRONICS CORPORATION; TOSHIBA CORPORATION; TOSHIBA MATSUSHITA DISPLAY TECHNOLOGY CO. LTD.; AU OPTRONICS CORP.; AU OPTRONICS CORPORATION AMERICA; CHI MEI OPTOELECTRONICS; and CHI MEI OPTOELECTRONICS USA, INC.<br><br>Defendants. | Case No. **CA 1 0 4 5 7 RGS**<br><br>**JURY TRIAL DEMANDED**<br><br>350<br>SUMMONS ISSUED_____<br>LOCAL RULE 4.1_____<br>WAIVER FORM_____<br>MCF ISSUED_____<br>BY DPTY CLK_____<br>3/7/07<br><br>MAGISTRATE JUDGE_____ |

## CLASS ACTION COMPLAINT

Plaintiff, by his attorneys, hereby brings this action to obtain injunctive relief

under Section 16 of the Clayton Act, 15 U.S.C. § 26 for violations of Section 1 of the

Sherman Act, 15 U.S.C. § 1, to recover damages under state antitrust and consumer

protection laws and state common law principles of restitution, disgorgement, unjust

enrichment, and to recover the costs of suit, including reasonable attorneys' fees, for the injuries that Plaintiff and all others similarly situated sustained as a result of Defendants' violations of those laws. Plaintiff's allegations as to himself and his own actions are based upon his own knowledge. All other allegations are based upon information and belief pursuant to the investigation of counsel. The Defendants have exclusive possession, custody or control of information and documents relating to their conspiracy to fix, raise, maintain and/or stabilize the prices of Thin Film Transistor Liquid Crystal Display products (hereinafter "TFT-LCD Products").

## NATURE OF THE CASE

1.  This action is brought as a class action on behalf of a plaintiff class (the "Class") consisting of all persons who indirectly purchased TFT-LCD Products from any of the Defendants in the United States from January 1, 1998 through the present.

2.  Defendants are the leading manufacturers of TFT-LCD Products in the world. Plaintiff alleges that during the Class Period, Defendants conspired, combined, and contracted to fix, raise, maintain, or stabilize the prices at which TFT-LCD Products were sold in the United States.

3.  Defendants' anticompetitive conduct has deliberately targeted, and injured consumers throughout the United States. The conspiracy has affected millions of dollars of commerce in products found in American households.

4.  As a result of Defendants' unlawful conduct, Plaintiff and the other members of the Class paid artificially inflated prices for TFT-LCD Products during the Class Period. Such prices exceeded the amount they would have paid if the price for TFT-LCD Products had been determined by a competitive market.

## JURISDICTION AND VENUE

5.    This Complaint is filed under Section 16 of the Clayton Act, 15 U.S.C. §
26, to obtain injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. §
1, to recover damages under state antitrust and consumer protection laws, and to recover
the costs of suit, including reasonable attorneys' fees, for the injuries that Plaintiff and
all others similarly situated sustained as a result of the Defendants' violations of those
laws.

6.    The Court has jurisdiction over the federal claim under 28 U.S.C. §§
1331 and 1337. The Court has jurisdiction over the state law claims under 28 U.S.C. §
1367 because those claims are so related to the federal claim that they form part of the
same case or controversy. The Court also has jurisdiction over the state law claims
under 28 U.S.C. § 1332 because the amount in controversy for the Class exceeds
$5,000,000, and there are members of the Class who are citizens of a different state than
the Defendants.

7.    Venue is proper in this District under 15 U.S.C. § 22 and 28 U.S.C. §
1391 because Defendants reside, transact business, or are found within this District, and
a substantial part of the events giving rise to the claims arose in this District.

8.    The activities of the Defendants and their co-conspirators, as described
herein, were within the flow of, were intended to, and did have a substantial effect on
the foreign and interstate commerce of the United States.

## DEFINITIONS

9.    As used herein, the term "TFT-LCD Products" means Thin Film
Transistor Liquid Crystal Display products, including such products as are used in
televisions, computer (both desktop and notebook) monitors, mobile phones, personal
digital assistants ("PDA's") and other devices.

10.    As used herein, the term "Class Period" means the time period extending
from at least January 1, 1998 through the present.

## THE PARTIES

### The Plaintiffs

11.    Plaintiff and proposed class representative Christopher Murphy, is a resident of Essex County, Massachusetts. During the time period covered by this Complaint, Plaintiff indirectly purchased TFT-LCD Products from one or more of the Defendants, their subsidiaries, divisions, units or affiliates. As a result, Plaintiff paid supra-competitive and artificially inflated prices for TFT-LCD Products and has been injured by reason of the illegal conduct alleged herein.

### The Defendants

12.    Defendant LG Philips LCD Co., Ltd. ("LG Philips") is a Korean entity with its principal place of business located at 20 Yoido-dong, Youngdungpo-gu, Seoul 150-721, Republic of Korea. LG Philips is a joint venture created in 1999 by Philips Electronics NV and LG LCD. LG Philips maintains offices within this District in San Jose, California. In its Form 6-K filed on December 11, 2006 with the United States Securities and Exchange Commission ("SEC"), LG Philips stated that it "is a leading manufacturer and supplier of thin-film transistor liquid crystal display (TFT-LCD) panels"; that it "manufactures TFT-LCD panels in a wide range of sizes and specifications for use in TVs, monitors, notebook PCs, and various applications"; that it "currently operates seven fabrication facilities and four back-end assembly facilities in Korea, China and Poland." (<http://www.lgphilips-

lcd.com/homeContain/jsp/eng/inv/inv200_j e.jsp>). During the Class Period, LG Philips manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

13.    Defendant LG Philips LCD America, Inc. is an entity organized under the laws of California with its principal place of business located in this District at 150 East

Brokaw Rd., San Jose, CA 95112. During the Class Period, LG Philips LCD America, Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

14.    Defendant Samsung Electronics Co. Ltd. ("Samsung") is a business entity organized under the laws of South Korea, with its principal place of business at Samsung Main Building 250-2 ga, Taepyung-ro Chung-gu, Seoul, Korea. During the Class Period, Samsung manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

15.    Defendant Sharp Corporation is a business entity organized under the laws of Japan, with its principal place of business at 22-22 Nagaike-cho, Abeno-ku, Osaka 545-8522, Japan. During the Class Period, Sharp Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

16.    Defendant Sharp Electronics Corporation is a wholly owned and controlled subsidiary of Sharp Corporation, with its principal place of business at Sharp Plaza, Mahwah, New Jersey, 07430. During the Class Period, Sharp Electronics Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the United States. Sharp Corporation and Sharp Electronics Corporation are referred to collectively herein as "Sharp."

17.    Defendant Toshiba Corporation is a business entity organized under the laws of Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 1058001, Japan. During the Class Period, Toshiba Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

18.    Defendant Toshiba Matsushita Display Technology Co., Ltd. is a business entity organized under the laws of Japan with its principal place of business located at Rivage Shinagawa, 1-8, Konan 4-chome, Minato-ku, Tokyo 108-0075, Japan. Defendant Toshiba Corporation states on its website the following regarding Toshiba Matsushita Technology Co., Ltd.: "[a]dvanced capabilities in LCD and organic LED

5

displays drive product development and production and enhanced sales operations with a truly worldwide reach. The company is the undisputed leader in low temperature polysilicon TFT technology, the preferred display for mobile devices and the underpinning technology for organic LED, the next generation display of-choice for a range of products, including thin profile televisions. These leading-edge capabilities support us in providing high value added displays that are light and thin, consume little power and offer excellent image quality."

(http://www.toshiba.co.jp/worldwide/about/company/tmd.html). During the Class Period, Toshiba Matsushita Display Technology Co., Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

19.     Toshiba Corporation and Toshiba Matsushita Display Technology Co., Ltd. are referred to collectively herein as "Toshiba."

20.     Defendant Hitachi Ltd. is a business entity organized under the laws of Japan, with its principal place of business at 6-1 Marunouchi Center Building 13F Chiyodaku,Tokyo,100-8220, Japan. During the Class Period, Hitachi Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

21.     Defendant Hitachi Displays, Ltd. is a business entity organized under the laws of Japan, with its principal place of business located at AKS Bldg. 5F, 6-2 Kanda Neribei-cho 3,Chiyoda-ku,Tokyo,101-0022, Japan. On its website, Hitachi Displays, Ltd. states that "[w]e provide the world' s best products, quality and service to meet the needs of the digital age. These include Hitachi's proprietary Advanced-Super IPS LCDs offering clear pictures from any angle; large-sized LCD modules for TVs using our original moving picture technology; small-sized LCD modules for information terminal devices such as cellular phones and digital cameras with low power consumption and high resolution picture realized by LTPS (low-temperature polysilicon) technology; and middle-sized colorful LCD modules for amusement devices. We also produce

components such as LCD drivers, color filters and back-lights." (http://www.hitachi-displays.com/en/company/ work/ index.html>). During the Class Period, Hitachi Displays, Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

22.    Defendant Hitachi America Ltd. is a wholly owned and controlled subsidiary of defendant Hitachi Ltd. Hitachi America Ltd. is a business entity organized under the laws of New York, with its principal place of business at 50 Prospect Avenue, Tarrytown, New York, 10591. During the Class Period, Hitachi America Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

23.    Defendant Hitachi Electronic Devices (USA), Inc. is a wholly owned and controlled subsidiary of Defendant Hitachi Ltd., and is a business entity with its principal place of business located at 575 Mauldin Road, Greenville, South Carolina 29607. During the Class Period, Hitachi Electronic Devices (USA), Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

24.    Defendants Hitachi Ltd., Hitachi Displays, Ltd., Hitachi America Ltd. and Hitachi Electronic Devices (USA), Inc. are referred to collectively herein as "Hitachi."

25.    Defendant Sanyo Epson Imaging Devices Corporation ("Sanyo Epson") is "a joint venture of Seiko Epson Corporation and Sanyo Electric Co., Ltd., started operations on October 1, 2004. It combines the liquid crystal display operations of Epson, Sanyo Electric, and Sanyo Group companies Tottori Sanyo Electric Co., Ltd. and Sanyo LCD Engineering Co., Ltd. and mobilizes each company's special fields of miniaturization, high resolution, high definition, and volume production technology." (<http://www.sanyoepson.com/e/company/outline/index.html>). Defendant Sanyo Epson's principal place of business is located at World Trade Center Building 15F, 2-4-1 Hamamatsu-cho, Minato-ku, Tokyo Japan. During the Class Period, Sanyo Epson manufactured, sold and distributed TFT-LCD Products to customers throughout the

United States.

26.     Defendant NEC Corporation is a business entity organized under the laws of Japan with its principal place of business located at 7-1, Shiba 5-chome, Minato-ku, Tokyo 1088001 Japan. During the Class Period, NEC Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

27.     Defendant NEC LCD Technologies, Ltd. is a wholly owned and controlled subsidiary of Defendant NEC Corporation, and is an entity organized under the laws of Japan with its principal place of business located at 1753 Shimonumabe, Nakahara-Ku, Kawasaki, Kanagawa 211-8666, Japan. During the Class Period, NEC LCD Technologies, Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

28.     Defendant NEC Electronics America, Inc. ("NEC") is a wholly owned and controlled subsidiary of NEC Electronics Corporation, with its principal place of business at 2880 Scott Boulevard, Santa Clara, California and its manufacturing plant in Roseville, California. During the Class Period, NEC manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

29.     Defendant IDT International Ltd. is an entity organized under the laws of Bermuda with its principal place of business located at Block C, 9th Floor, Kaiser Estate Phase 1, 41 Man Yue Street, Hunghom, Kowloon, Hong Kong. During the Class Period, IDT International Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

30.     Defendant International Display Technology Co., Ltd. is an entity organized under the laws of Japan with its principal place of business located at Nansei Yaesu Bldg. 3F, 22-10 Yaesu, Chuo-Ku, Tokyo 104-0028, Japan. Defendant International Display Technology Co., Ltd. is a subsidiary of Defendant Chi Mei Optoelectronics Corporation. During the time period covered by this Complaint, Defendant International Display Technology Co., Ltd. manufactured, sold, and

distributed TFT-LCD Products to customers throughout the United States.

31.    Defendant International Display Technology USA Inc. is a corporation with its principal place of business located at 101 Metro Drive Suite 510, San Jose, California. Defendant International Display Technology USA Inc. is a subsidiary of Defendant Chi Mei Optoelectronics Corporation. During the time period covered by this Complaint, Defendant International Display Technology USA Inc. manufactured, sold, and distributed TFT-LCD Products to customers throughout the United States.

32.    Defendant AU Optronics Corp. is Taiwan's largest manufacturer of TFT-LCD Products and has its corporate headquarters at No. 1, Li-Hsin Rd. 2, Hsinchu Science Park, Hsinchu 30078, Taiwan, R.O.C. During the Class Period, AU Optronics. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

33.    Defendant AU Optronics Corporation America ("AUOCA") is a wholly owned and controlled subsidiary of defendant AU Optronics and has its corporate headquarters at 9720 Cypresswood Drive, Suite 241, Houston, Texas. AUOCA has a facility located in San Diego, California. During the Class Period, AUOCA manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

34.    Defendant Chi Mei Optoelectronics ("Chi Mei") is a leading manufacturer of TFT-LCD Products and has its global headquarters at No. 3, Sec. 1, Huanshi Rd., Southern Taiwan Science Park, Sinshih Township, Tainan County, 74147 Taiwan R.O.C. During the Class Period, Chi Mei manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

35.    Defendant Chi Mei Optoelectronics USA, Inc. is a wholly owned and controlled subsidiary of Chi Mei and has its corporate headquarters at 101 Metro Drive Suite 510, San Jose, California. During the Class Period, Chi Mei Optoelectronics USA, Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the

United States.

**Co-Conspirators**

36.    Various others, presently unknown to Plaintiff, participated as co-conspirators with the Defendants in the violations of law alleged in this Complaint and have engaged in conduct and made statements in furtherance thereof.

37.    The acts charged in this Complaint have been done by Defendants and their co-conspirators, or were authorized, ordered or done by their respective officers, agents, employees or representatives while actively engaged in the management of each Defendant's business or affairs.

38.    Each of the Defendants named herein acted as the agent or joint venturer of or for the other Defendants with respect to the acts, violations and common course of conduct alleged herein.

## INTERSTATE TRADE AND COMMERCE

39.    The activities of Defendants and their co-conspirators that are the subject of this Complaint were within the flow of, and substantially affected, interstate and foreign trade and commerce.

40.    Defendants and their co-conspirators, and each of them, have used instrumentalities of interstate commerce to manufacture, sell, distribute and market TFT-LCD Products.

41.    During the Class Period, Defendants and their co-conspirators made a substantial number of sales of TFT-LCD Products in a continuous and uninterrupted flow of interstate and international commerce to customers located in states other than the states in which Defendants and their co-conspirators are located.

{00010699.DOC ; 1}                                    10

## CLASS ACTION ALLEGATIONS

42.    Plaintiff brings this suit as a class action pursuant Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and a Plaintiff Class ("the Class") composed of and defined as follows:

> All persons residing in the United States who, from January 1, 1998 through the present, purchased TFT-LCD Products in the United States indirectly from the Defendants or their co-conspirators or any predecessor, subsidiary, or affiliate of each, for their own use and not for resale. Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

43.    With respect to Counts Two, Three, and Four, the Class seeks damages for those persons harmed by Defendants' unlawful conduct in the United States enumerated in those Counts.

44.    This action has been brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons: The Class is ascertainable, and there is a well-defined community of interest among the respective members of the Class.

45.    Based on the nature of the trade and commerce involved and the number of indirect purchasers of TFT-LCD Products, Plaintiff believes that class members in the Class number in the thousands, and therefore are sufficiently numerous that joinder of all Class members is not practicable.

46.    Except as to the amount of damages each member of the Class has sustained, all other questions of law and fact are common to the Class, including, but not limited to:

a)    Whether Defendants engaged in a contract, combination or conspiracy among themselves and/or their co-conspirators to fix, raise, maintain, or stabilize the prices of TFT-LCD Products sold in the United States;

b)    The identity of the participants in the conspiracy;

c)    The duration of the conspiracy alleged in the Complaint and the nature and character of the acts performed by Defendants and their co-conspirators in furtherance of the conspiracy;

d)    Whether the conspiracy violated Section 1 of the Sherman Act;

e)    Whether the Defendants and their co-conspirators engaged in unlawful, unfair or deceptive contracts, combinations or conspiracies among themselves, express or implied, to fix, raise, maintain, or stabilize prices of TFT-LCD Products sold in and/or distributed in the United States;

f)    Whether the Defendants and their co-conspirators engaged in conduct that violated state antitrust, unfair competition, and/or consumer protection laws as alleged herein;

g)    Whether the anticompetitive conduct of the Defendants and their co-conspirators caused prices of TFT-LCD Products to be artificially inflated to non-competitive levels;

h)    Whether the Defendants and their co-conspirators fraudulently concealed the existence of their unlawful conduct;

i) Whether Plaintiff and the Class are entitled to injunctive relief; and

j) Whether Plaintiff and other members of the Class were injured by the conduct of Defendants and, if so, the appropriate class-wide measure of damages.

47. These and other questions of law and fact are common to the Class and predominate over any question affecting only individual members of the Class, including legal and factual issues relating to liability, damages, and restitution.

48. Plaintiff's claims are typical of the claims of all members of the Class in that Plaintiff was a purchaser of TFT-LCD Products, the Plaintiff and all Class members were injured by the same anti-competitive and unlawful conduct of Defendants and their co-conspirators as alleged herein, and the relief sought is common to the Class.

49. Plaintiff will fairly and adequately protect the interests of the Class, in that, Plaintiff is a typical indirect-purchaser of TFT-LCD Products, and has no interests that are antagonistic to other members of the Class. Furthermore, Plaintiff has retained competent counsel experienced in the prosecution of class actions and antitrust and consumer protection litigation.

50. This class action is superior to any alternatives for the fair and efficient adjudication of this controversy because:

a) It will avoid a multiplicity of suits and consequent burden on the Court and parties;

b) It would be virtually impossible for all Class members to intervene as parties-plaintiff in this action;

{00010699.DOC ; 1}                                    13

c) It will allow numerous individuals or entities with claims too small to adjudicate on an individual basis because of the prohibitive cost of this litigation, to obtain redress for their economic injuries;

d) A class action is appropriate for treatment on a fluid recovery basis, which will obviate any manageability problems; and

e) It will provide court oversight of the claims process, once Defendants' liability is adjudicated.

51. Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

52. In the absence of a class action, Defendants would be unjustly enriched because they would be able to retain the benefits and fruits of their wrongful conduct.

## NATURE OF THE TFT-LCD MARKET

53. Throughout the Class Period, Defendants and their co-conspirators engaged in the business of marketing and selling TFT-LCD Products throughout the United States.

54. The TFT-LCD Products at issue are used in a broad range of consumer electronic products that are available either as stand alone products, such as flat-panel televisions and monitors, or as significant component parts of consumer electronic devices, such as mobile phone and laptop screens, and screens on digital cameras and portable digital media players.

55. Defendants' TFT-LCD Products are sold by a host of companies under different brand names. Companies that use Defendants' TFT-LCD displays for laptop computer monitors include Hewlett-Packard, Toshiba, Acer and Dell. In addition to desktop monitors sold under Defendants' own brand names, TFT-LCD panels can be

found in products sold by Dell, Hewlett-Packard and Apple. Flat screen televisions sold by Toshiba and Matsushita utilize Defendants TFT-LCD panels. Other companies that use Defendants' TFT-LCD panels in consumer products include Seiko instrument Inc., Sinco, Action Technology, and Noedis.

56. As Defendant LG Philips states on its website, "the thin-film transistor liquid crystal display ("TFT-LCD") is a cutting-edge display, which screens picture information by adjusting the amount of light permitted." (<http://www.lgphilips-lcd.com/homeContain/jsp/eng/tech/tech210j_e.jsp>). LG Philips further states that "TFT is a circuit formed with semiconductor films on a thin glass substrate to control liquid crystals.... This circuit plays a vital role in controlling each pixel, the basic unit of a picture image. The color filter displays a color image by coating the pixel (red, green and blue) on a glass substrate." Id.

57. At the portion of its website entitled "How TFT-LCD Works" Defendant LG Philips explains:

> A pixel, the smallest unit to indicate a picture image, is formed by three subpixels consisting of red, green, and blue. The number of pixels arranged in a display determines the resolution of the TFT-LCD. TFT is composed of the data line (image signal transfer) and gate line (TFT on/off signal transfer). TFT existing in each sub-pixel controls the voltage difference between the TFT glass electrode and the color filter glass electrode in order to adjust the molecular array of liquid crystals. Such a change in the molecule direction of liquid crystals alters the amount of light penetrating the liquid crystal layer. Consequently, the TFT-LCD display shows picture image information.

(<http://www.lgphilips-lcd.com/homeContain/jsp/eng/tech/tech2l 00 1_j e.jsp>)

58. The company describes some of the applications for TFT-LCD technology as follows:

> TFT-LCD technology has created a wide range of computer and consumer products that would have not been possible with cathode-ray tubes (CRT). The flat and thin attributes of LCDs makes them ideal for mobile or portable applications. In addition, LCDs can operate at low voltage levels and dissipate with low heat exposure. Initially, LCDs were

{00010699.DOC ; 1}                                           15

incorporated into notebook computers, similar in size and resolution to 12-14 inch CRT monitors. Through innovation, TFT-LCD engineers were able to develop displays providing much higher resolution than CRTs, in addition to producing them in larger sizes. Today, TFT-LCDs are challenging CRT-based desktop computer monitors. As a result, a wider range of mobile computing applications are now available. Engineers have found ways to reduce weight, thickness, and the frame width of notebook computer displays. New TFT process technologies make it possible to deliver more pixels per inch and allow even portable computers to display more information than the latest CRT monitor. Such technology became available just as DVDs became popular, so consumers can now get DVD players in very thin and light packages. Currently, a similar transformation is occurring with next-generation cell phones and wireless networks. (<http://www.lgphilips-lcd.com/homeContain/jsp/eng/tech/ tech210 02 j e.jsp>).

59.    The market for TFT-LCD Products is huge. An October 10, 2006 article stated that "[m]anufacturers are expected to pump out 48.4 million LCDs for TVs this year alone, up 70 percent over 2005, while flat-panel sales - most of those using LCD technology - are expected to reach $US 88 billion this year and $US 100 billion in 2007, according to market research company DisplaySearch."

(<http://www.theage.com.au/news/home-theatre/they-are-building-itbut-will-lcd-sales-come/2006/10/09/1160246068541.html#>).

60.    The market for the manufacture and sale of TFT-LCD Products is also conducive to the type of collusive activity alleged here. That market is oligopolistic in nature. According to data from iSuppli, in 2005, LG Philips had 21.4% of the large TFT-LCD, panel global market share, Samsung had 20.9%, AU Optronics had 14.5%, and Chi Mei had 11.8%.(<http://www.eetimes.com/showArticle.jhtml?articleID=177101936>). Samsung took over the leading position in the industry in 2006.

(<http://biz.yahoo.com/rb/061211/ lgphilips investigation.html?.v=2 >).

61.    Some of these companies are known antitrust violators. Samsung, for example, was fined $300 million by the United States Department of Justice ("DOJ") in October of 2005 for participating in a conspiracy to fix prices for Dynamic Random Access Memory.

62. The industry is also marked by a web of cross-licensing agreements that facilitate collusion. AU Optronics, for example, entered into licensing arrangements with Sharp in 2005 and Samsung in 2006. Chi Mei has licensing arrangements with Sharp, AU Optronics and Hitachi.

63. The market for the manufacture and sale of TFT-LCD Products is subject to high manufacturing and technological barriers to entry, some of which are described in Samsung's own November 3, 2005 "Market Perspective & Strategy" presentation available at its website.

(<http://www.samsung.com/AboutSAMSUNG/ELECTRONICSGLOBAL/InvestorRel ations/IR EventsPresentations/AnalystDay/index.htm >). Efficient fabrication plants are large and costly. TFT-LCD Products are also subject to technological advances, so that firms within the industry must undertake significant research and development expenses.

64. The TFT-LCD Products industry has also been subject to significant consolidation during the Class Period, as reflected in AU Optronics' recent acquisition of Quanta Display, the creation in 2001 of AU Optronics itself through the merger of Acer Display and Unipac Optoelectronics, or Fujitsu Limited's transfer of its LCD business to Sharp in 2005.

65. Defendants sell their TFT-LCD Products through various channels including to manufacturers of electronic products and devices, and to resellers of TFT-LCD Products. These electronic products and devices and TFT-LCD Products are then sold, directly or indirectly, to consumers and are not altered during the course of sale.

## DEFENDANTS' ILLEGAL CONDUCT

66. Defendants and their co-conspirators have engaged in a contract, combination, trust or conspiracy, the effect of which was to raise the prices at which they sold TFT-LCD Products to artificially inflated levels from at least January 1, 1998 through the present.

67. Very recently, antitrust enforcement authorities in multiple countries have

begun investigating this unlawful cartel. On December 11, 2006, Defendant LG Philips,

in its Form 6-K filed with the SEC, stated the following:

> Last Friday, as part of an investigation of possible anticompetitive
> conduct in the LCD industry, officials from the Korean Fair Trade
> Commission (KFTC) visited the offices of LG Philips LCD in Seoul
> Korea. In addition, the Japanese Fair Trade Commission (JFTC)
> issued a notice to our offices, in Tokyo, Japan and then United States
> Department of Justice (DOJ) issued a subpoena to our offices in San
> Jose, California.

(<http://www.lgphilips-lcd.com/homeContain/jsp/eng/inv/inv200;j e.jsp>).

68. On December 11, 2006, the Reuters news agency reported the following:

Samsung Electronics Co. Ltd. (005930.KS) is being investigated by fair
trade watchdogs in South Korea, Japan and the United States, the second
Korean flat screen maker named in a probe into possible price-fixing, a
news agency report said on Tuesday.

The report, from South Korea's Yonhap news agency, follows a disclosure
by LG Philips LCD Co. Ltd. (034220.KS) on Monday that it was the
target of an investigation by the Korean Fair Trade Commission (KFTC),
the Japanese Fair Trade Commission (JFTC) and had received a subpoena
from the U.S. Department of Justice ...

Yonhap cited unnamed regulatory and industry sources in reporting local
antitrust authorities were also looking into possible collusion by
Samsung and LG Philips to fix the prices of LCD products and control
their supply ...

69. On December 12, 2006, other companies, including AU Optronics, Sharp,

Sanyo Epson, indicated they were under investigation.

70. According to one report, "'[t]he subject of the probe is price fixing,'

Akinori Yamada, a director of management and planning at Japan's Fair Trade

Commission, said in Tokyo today. He said LG Philips and Samsung were being

questioned, although he declined to name or give the number of the other companies

being investigated. In Washington, U.S. Justice Department spokeswoman Gina

Talamona said the agency 'is investigating the possibility of anticompetitive practices'

and is cooperating with foreign authorities."

(<http://www.bloomberg.com/apps/news?pid=20601080&sid=aSF7WY69eUPg&refer=a
sia>).

71.    Michael Min, an analyst at Korea Investment and Securities, has been
quoted as saying that the investigation may be focused on a period over the last several
years when manufacturers of TFT-LCD Products were charging comparable prices.
(<http://www.washingtonpost.com/wp-dyn/content/article/2006/12/12/
AR2006121200260.html>).

72.    There are also other indications that Defendants have engaged in
collusive activity. A "Crystal Cycle" is an industry term that refers to shortages in the
supply-and-demand cycle for LCD displays. A recent article in *Infoworld* (available at <
http://www.infoworld.com/article/06/06/13/79145 25OPreality_1.html>) cited Chris
Connery, an industry analyst at DisplaySearch, as follows: "[a]ccording to Connery, the
talk in the industry is that the manufacturers are looking to create an artificial Crystal
Cycle. At a recent conference in Taiwan, a leading producer of LCD glass stated publicly
that the industry should collectively look at cutting back on production from 100 percent
to at least 85 percent. Otherwise, if supply outpaces demand, manufacturers will be
forced to cut prices. ... Will the mother-glass manufacturers actually create this artificial
shortage? 'The chatter is growing louder each day,' Connery says." A subsequent
*Infoworld* article (<http://www.infoworld.com/article/06/06/12/79223
HNphilipscutslcd_1.html >) noted that the unnamed Taiwanese executive came from AU
Optronics.

73.    Similarly, Samsung's presentation described above noted that "it was
possible to secure a reasonable amount of profit while following the industry leaders"
during the Class Period.

74.    Defendants, through their officers, directors and employees, effectuated
the aforesaid contract, combination, trust or conspiracy between themselves and their co-

conspirators by, among other things:

a)      participating in meetings and conversations, including through various trade associations and committees, to discuss the prices of TFT-LCD Products in the United States;

b)      agreeing, during those meetings and conversations, to charge prices at specified levels and otherwise to increase and maintain prices of TFT-LCD Products sold in the United States;

c)      issuing price announcements and quotations in accordance with the agreements reached; and

d)      selling TFT-LCD Products to various customers in the United States at noncompetitive prices.

## FRAUDULENT CONCEALMENT

75.     Throughout and beyond the conspiracy, Defendants and their co-conspirators affirmatively and actively concealed their unlawful conduct from Plaintiff.

76.     The contract, combination and conspiracy alleged herein is, by its very nature, self-concealing.

77.     Defendants and their co-conspirators conducted their conspiracy in secret, concealed the true nature of their unlawful conduct and acts in furtherance thereof, and actively concealed their activities through various other means and methods to avoid detection. Defendants and their co-conspirators conducted their conspiracy in secret and kept it mostly within the confines of their higher-level executives.

78.     Defendants and their co-conspirators publicly provided pretextual and false justifications regarding their price increases.

79.     Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants and their co-conspirators were violating the antitrust laws as alleged herein until shortly before this class action litigation was commenced.

{00010699.DOC ; 1}                      20

80.     As a result of the active concealment of the conspiracy by Defendants
and their co-conspirators, any and all applicable statutes of limitations otherwise
applicable to the allegations herein have been tolled.

## VIOLATIONS ALLEGED

### Count One

### (Violation of Section 1 of the Sherman Act)

81.     Plaintiff incorporates and realleges, as though fully set forth herein, each
and every allegation set forth in the preceding paragraphs of this Complaint, and further
alleges, as follows, against all Defendants.

82.     Beginning in at least January, 1998, the exact date being unknown to
Plaintiff and exclusively within the knowledge of Defendants, Defendants and their co-
conspirators, by and through their officers, directors, employees, agents, or other
representatives, entered into a continuing contract, combination or conspiracy in restraint
of trade and commerce in the United States, in violation of Section 1 of the Sherman Act,
15 U.S.C. § 1.

83.     In particular, Defendants have combined and conspired to fix, raise,
maintain or stabilize the prices of TFT-LCD Products sold in the United States.

84.     Defendants, by their unlawful conspiracy, artificially raised, inflated and
maintained the market prices of TFT-LCD Products as herein alleged.

85.     The contract, combination or conspiracy consisted of a continuing
agreement, understanding and concert of action among Defendants and their co-
conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the
prices of TFT-LCD Products they sold in the United States and elsewhere.

86.     For the purpose of formulating and effectuating their contract,

combination or conspiracy, Defendants and their co-conspirators did those things they

contracted, combined or conspired to do, including but not limited to the acts, practices

and course of conduct set forth above, and the following, among others:

a)     Agreeing to manipulate prices and supply of TFT-LCD Products in

a manner that deprived Plaintiff and class members of free and open competition;

b)     Issuing price announcements and price quotations in accordance

with the agreements reached;

c)     Submitting rigged bids for the award and performance of certain

TFT-LCD Products; and

d)     Allocating among themselves to reduce the production of TFT-

LCD Products.

87.     The combination and conspiracy alleged herein has had the following

effects, among others:

a)     Price competition in the sale of TFT-LCD Products has been

restrained, suppressed, and/or eliminated in the United States;

b)     Prices for TFT-LCD Products sold by Defendants and their co-

conspirators have been fixed, raised, maintained and stabilized at artificially high, non-

competitive levels throughout the United States; and

c)     Those who purchased TFT-LCD Products directly or indirectly

from Defendants and their co-conspirators have been deprived of the benefits of free and

open competition.

88.    As a direct result of the unlawful conduct of Defendants and their co-conspirators in furtherance of their continuing contract, combination or conspiracy, Plaintiff and other members of the Class have been injured in their business and property in that they have paid more for TFT-LCD Products than they would have paid in the absence of Defendants' and their co-conspirators' price fixing.

89.    Plaintiff and the Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## Count Two

### (Violation of State Antitrust Statutes)

90.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint, and further alleges, as follows, against all Defendants.

91.    Defendants' intentional and purposeful anti-competitive acts that are described above, including but not limited to collusion to set prices and the actual act of price fixing, caused and was intended to cause Plaintiff and the Class to pay supra-competitive prices for TFT-LCD Products.

92.    Defendants' monopolistic and anticompetitive acts as described above are in violation of the following state antitrust statutes:

93.    Defendants have violated Arizona Revised Statutes § 44-1403.

94.    Defendants have violated California Business & Professions Code § 16700, et seq.

95.    Defendants have violated District of Columbia Code § 28-4503.

96.    Defendants have violated Florida Statutes § 542.19.

{00010699.DOC ; 1}                                23

97. Defendants have violated Iowa Code § 553.5.

98. Defendants have violated Kansas Statutes § 50-101.

99. Defendants have violated Maine Revised Statutes, Title 10 § 1102.

100. Defendants have violated Michigan Compiled Laws § 445.773.

101. Defendants have violated Minnesota Statutes § 325D.52.

102. Defendants have violated Mississippi Code § 75-21-1, *et seq.*

103. Defendants have violated Nevada Revised Statutes § 598A.060.

104. Defendants have violated New Mexico Statutes § 57-1-2.

105. Defendants have violated New York General Business Law § 340, *et seq.*

106. Defendants have violated North Carolina General Statutes § 75-2.1.

107. Defendants have violated North Dakota Century Code § 51-08.1-03.

108. Defendants have violated South Dakota Codified Laws § 37-1-3.2.

109. Defendants have violated Tennessee Code § 47-25-101, *et seq.*

110. Defendants have violated Vermont Statutes, Title 9, § 2453.

111. Defendants have violated West Virginia Code § 47-18-4.

112. Defendants have violated Wisconsin Statutes § 133.03.

113. Plaintiff and the Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial. Plaintiff and the Class seek treble damages pursuant to the antitrust laws as stated above where they are allowed.

114. Defendants' willful and unlawful conduct allows Plaintiff and the Class to seek attorneys' fees in the states where they are allowed by law. Therefore, Plaintiff and the Class seek attorneys' fees where they are allowed by law.

## Count Three

### (Violation of State Consumer Statutes)

115.    Plaintiff incorporates and realleges, as though fully set forth herein, each
and every allegation set forth in the preceding paragraphs of this Complaint, and further
alleges, as follows, against all Defendants.

116.    The deceptive practices of the Defendants as alleged above included but
are not limited to collusion between Defendants in setting prices and actual price fixing
with the intended purpose to maintain supra-competitive pricing in the market for TFT-
LCD Products(all unknown to the general consumer public). Defendants' deceptive and
anti-competitive conduct resulted in higher consumer prices for TFT-LCD Products.

117.    Defendants' acts as described above are in violation of the following state
Consumer Protection statutes:

118.    Defendants have violated California Business & Professions Code §
17200, *et seq.*

119.    Defendants have violated District of Columbia Code § 28-3901.

120.    Defendants have violated Florida Statutes § 501.201.

121.    Defendants have violated Kansas Statutes § 50-101.

122.    Defendants have violated Maine Revised Statutes, Title 5 § 207, *et seq.*

123.    Defendants have violated Nevada Revised Statutes § 598.0903, *et seq.*

124.    Defendants have violated New Mexico Statutes § 57-12-1, *et seq.*

125.    Defendants have violated North Carolina General Statutes § 75-1.1, *et seq.*

126.    Defendants have violated Vermont Statutes, Title 9, § 2451, *et seq.*

127.    Defendants have violated West Virginia Code § 46A-6-101, *et seq.*

128.    Plaintiff and the Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial.

129.    Defendants' willful and unlawful conduct allow Plaintiff and the Class to seek attorneys' fees in the states where they allowed by law. Therefore, Plaintiff and the Class seek attorneys' fees where they are allowed by law.

## Count Four

### (Restitution For Unjust Enrichment)

130.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint, and further alleges, as follows, against all Defendants.

131.    This claim is asserted on behalf of class members who indirectly purchased TFT-LCD Products and reside in the following states:  Arizona, California, the District of Columbia, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nevada, New Mexico, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin.

132.    The Defendants have knowingly accepted and benefited from the overcharges they have been able to levy for TFT-LCD Products resulting from the acts alleged herein and the overpayments by Plaintiff and the Class.

133.    As a direct and proximate result of the Defendants' acts and practices, the Defendants have been and are continuing to be unjustly enriched at the expense of and to the detriment of the Plaintiff and members of the Class.

134.    Plaintiff and the Class have conferred upon the Defendants an economic benefit in the nature of revenues resulting from unlawful overcharges, to Plaintiff's and the Class' economic detriment.

135.    The economic benefit of overcharges obtained by supra-competitive prices is a direct and proximate cause of Defendants' anti-competitive behavior restricting competition as set forth below.

136.    The benefit held by Defendants rightfully belongs to Plaintiff and the Class, as Plaintiff and the Class have paid supra-competitive sums during the Class Period.

137.    It would be inequitable for Defendants to be permitted to retain any of the proceeds of the conspiracy.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the members of the Class, prays for judgment against the Defendants, jointly and severally, as follows:

A.      Declare that this action is a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the Class as defined herein and further order notice of such action to all members of the Class in the most effective practicable manner;

B.      Find that the Defendants, by participating in the contract, combination and conspiracy alleged herein,

> (i)     acted in violation of Section 1 of the Sherman Act identified in Count One;

(ii)     acted in violation of the state antitrust laws and state consumer protection and unfair competition laws identified in Counts Two and Three;

(iii)    were unjustly enriched as set forth in Count Four.

C.     Enjoin Defendants from continuing the illegal activities alleged herein;

D.     Award Plaintiff and members of the Class damages as provided by law, including actual damages, multiple damages where provided by law and/or statutory minimum damages where provided by law, and joint and several judgments in favor of Plaintiff and the Class as provided by law;

E.     Award Plaintiff and members of the Class restitution on a pro-rata basis, including disgorgement of profits obtained by Defendants as a result of their acts of unfair competition and acts of unjust enrichment;

F.     Award Plaintiff and the members of the Class pre-judgment and post-judgment interest on the above sums at the highest rate provided by law;

G.     Allow Plaintiff and members of the Class to recover their reasonable attorneys' fees and costs as provided by law; and

H.     Grant such other and further relief as this Court deems to be necessary, proper just and/or equitable.

## JURY TRIAL DEMANDED

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a

trial by jury on all issues so triable as a matter of right.

Dated: March 7, 2007

GILMAN AND PASTOR, LLP

Kenneth G. Gilman #192760
Daniel D'Angelo BBO# 630321
225 Franklin Street, 16th Floor
Boston, MA 02110
Tel: (617) 742-9700
Fax: (617) 742-9701
Kgilman@gilmanpastor.com
Ddangelo@gilmanpastor.com

Attorneys for Plaintiff and the Class