1

2   LINGEL H. WINTERS, ESQ. (SBN 37759)
    LAW OFFICES OF LINGEL H. WINTERS
3   A PROFESSIONAL CORPORATION
    One Maritime Plaza, Suite 400
4   San Francisco, CA 94111
    Telephone:    (415) 398-2941
5   Facsimile:    (415) 393-9887

6   Attorneys for Plaintiff and the Putative Class

7

8

9                   UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12                                              MDL No. M:07-cv-01827 SI
    IN RE TFT-LCD (FLAT
13  PANEL)ANTITRUST LITIGATION                  Case No. :3;07-cv-2796 SI

14  ―――――――――――――                               CLASS ACTION

    THIS DOCUMENT RELATES TO                    REPLY MEMORANDUM
15                                              INDIRECT PURCHASER
    ALL INDIRECT PURCHASER ACTIONS              LEADERSHIP PROPOSAL OF
16                                              LINGEL H. WINTERS P.C.

17                                              Date: June 8, 2007
                                                Time: 2:00 p.m.
18
                                                Hon. Susan Illston
19                                              Courtroom: 10

20

21

22

23

24

25

26

27

28

## **INTRODUCTION**

Lingel H. Winters P.C., resume attached, is plaintiff's counsel in the related case of *EMW, Inc. v. L.G. Philips Co. Ltd. et al. Case No. C072796 SI.* The California *Microsoft*[1] Indirect Purchasers Antitrust Class Action, of which Lingel H. Winters P.C. was an Executive Committee Member, was a success for the class and the community – it achieved a settlement for consumers valued at $1.1 Billion for class members and for California school children. A hallmark of the *Microsoft* Executive Committee was that its diversity   ranged from the power and resources of Townsend & Townsend & Crew to the agility of Lingel H. Winters P.C. There were twelve firms represented on the *Microsoft* Executive Committee, which gave it a broad diversity of "smarts", but since seven of the firms were small, including four solo practitioners, it was not overstaffed. This structure is reminiscent of the large company approach to innovation and agility, frequently placing creative efforts in start-ups to avoid the rigidity of larger operations.  Under the *Microsoft* structure, Townsend monitored and controlled hours and costs stringently, using an on-line data entry system for keeping track of services and costs. Craig Corbitt and Fran Scarpulla (the dean of California Indirect Purchaser litigation) of the Zelle firm brought a great deal of wisdom to the *Microsoft* Executive Committee; thus, Zelle's work as well as Lingel H. Winters' work in *Microsoft* qualify them to play leadership roles in the instant case.  Lingel H. Winters PC also had the privilege of serving on the executive committee of the whole with the Furth firm in the *3M Transparent Tape Antitrust Case* in this district.

---

[1] Since the *Microsoft* case produced a $1.1 Billion result for the class, it is  a better benchmark of effectiveness for the class than the *DRAM* Indirect Purchaser case, which as yet has  produced no measurable results.

# I. <u>MANAGEMENT</u>

Unlike individual litigation, complex cases call for extraordinary management skills.  In complex litigation, the ability to blend the skills of various firms through "cooperation and coordination," as Mr. Lehmann puts it, may be the paramount key to victory.  Certainly, the Zelle firm and Lingel H. Winters PC has demonstrated these skills in the *Microsoft* case.  Before opening my business litigation practice in 1982, I became seasoned in the management of complex litigation, including antitrust and patent cases, as General Counsel of a small high-tech company and as Associate General Counsel of National Semiconductor.   Having personally tried a 3 ½ month patent-antitrust case in this district involving analog to digital converters, I am mindful of the trial skills required and respectful of those possessed by Joseph M. Alioto and Fred Furth both of whom demonstrate that quality is in the individual lawyer, not in firm size.

# I.      <u>UNIQUE HIGH-TECH EXPERIENCE</u>

The unique quality that Lingel H. Winters PC brings to the table, apart from significant antitrust experience, is that I have litigated a very broad range of allied high-tech products in the antitrust and patent context over the past 35 years, including Microsoft computer software, dual slope analog to digital converters, semiconductors, semiconductor manufacturing equipment, accelerometers utilized as sensors for controlling missiles and aircraft, transducers utilized in paving controllers, semiconductor medical applications, electronic security devices and the fire detectors installed on Boeing 737s.  As Mr. Lehmann points out "expertise gained through litigation involving allied industries" is material to the choice of leadership, and in this regard Lingel H. Winters PC has a unique, broad range of litigation experience.

//

//

## II.    PRIVATE ORDERING

Private ordering is important, but there is an essential role for the Court to play in assuring that the best interests of the Class are represented.  In fact, in the *CRAM* Indirect Purchasers Case, Judge Hamilton exercised her judicial discretion to appoint one of my fellow solo attorneys from the *Microsoft* Executive Committee to the *DRAM* Indirect Purchasers Executive Committee, thus providing greater diversity in the leadership.

## III.    CALIFORNIA

Ofcourse, it is important that claims from all states be represented effectively.  However, this Court was selected by the MDL panel because of the predominant number of California cases.  Moreover, in drafting the *Eliasoph* complaint, Zelle et al. stressed the importance of the California Cartwright Act and California Unfair Competition Law claims as the core of the class monetary claims by pleading them in great detail (Second and Third Claims), while batch pleading the plethora of Other State Law Claims in Claims Four and Five. As a result, California firms, including small firms, steeped in California antitrust and unfair competition law should have a significant and diverse representation in the management of the case.

## IV.    CONCLUSION

Just as the successful experience on the *Microsoft* Executive Committee recommends Zelle, it also recommends Lingel H. Winters PC for a leadership position in this case.  Moreover, Lingel H. Winters PC has complex litigation management skills and a unique breadth of experience litigating high-tech cases in allied industries.  We suggest the Court appoint a diverse Executive Committee consisting of Zelle, Hofmann, Voebel Mason & Gette LLP, Furth, Lehmann & Grant LLP, Straus & Boies LLP, Lovell, Stewart, Halebian LLP, Gustafson, Luek PLLC, Steyer, Lowenthal, Boodrookas, Alvarez & Smith LLP, Minami Tamaki LLP, Alioto Law Firm and

Lingel H. Winters PC as members of the Indirect Purchasers Executive Committee and permit the Executive Committee to select Lead and Liaison Counsel.

Date: _____          LINGEL H. WINTERS P.C.


By:_____

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

REPLY MEMORANDUM LEADERSHIP

1
2
3
4
**LINGEL H. WINTERS**
5
a Professional Corporation
6
Alcoa Building, Suite 400
7
One Maritime Plaza
8
San Francisco, CA 94111
9
415-398-2941
10

11 **EDUCATION:**          **UNIVERSITY OF CALIFORNIA,** BERKELEY, CA
12                             School of Law (Boalt Hall)
13                             Juris Doctor Degree 1965
14
15                             **YALE UNIVERSITY,** New Haven, CT
16                             Bachelor of Arts Degree 1960
17 **EXPERIENCE:**
18 Aug 82 – Present        **LAW OFFICES OF LINGEL H. WINTERS**
19                             **President,** a Professional Corporation
20
21 Mar 80 – Jul 82         **NATIONAL SEMICONDUCTOR CORPORATION**
22                             **Associate General Counsel**
23                             2900 Semiconductor Dr.
24                             Santa Clara, CA
25
26 May 72 – Feb 80        **SYSTRON-DONNER CORPORATION**
27                             **General Counsel & Secretary**
28                             One Systron Drive, Concord, CA

REPLY MEMORANDUM LEADERSHIP

1

2    Dec 68 – Apr 72       **KAISER AFFILIATED COMPANIES**

3        **A.**       **Corporate Counsel**

4                  300 Lakeside Dr.

5                  Oakland, CA

6

7    Jan 66 – Dec 68       **WAGNER, LYNCH, CURRAN and MINNEY**

8                  **Trial Lawyer**

9                  800 Tribune Tower

10                 Oakland, CA

11

12 Lingel H. Winters received his B. A. from Yale University in 1960 and his J. D. from the

13 University of California at Berkeley (Boalt Hall) in 1965. He is admitted to practice before the

14 courts of California, the U. S. District Courts for the Northern and Central Districts of California,

15 the Ninth Circuit Court of Appeals and the U. S. Supreme Court.

16

17 Mr. Winters has over 35 years of experience in litigating and managing high technology antitrust

18 and business litigation as trial counsel and as General Counsel of Syston-Donner Corporation,

19 adverse electronics company and as Associate General Counsel of National Semiconductor

20 corporation, a semiconductor and computer manufacturer, and in his own business litigation

21 practice.

22

23 Mr. Winters was a member of the plaintiffs' Executive Committee, managing the California State

24 Court Microsoft Coordination Proceedings J.C.C.P. No. 4106, Antitrust Litigation, which was

25 certified as a class action  and resulted in a settlement valued at

26 $1.1 Billion. In addition, Mr. Winters is a member of the executive committee of the whole in the

27 Urethane Cases J.C.C.P. 4367 and 3M Transparent Tape Cases, J.C.C.P. 4338 Antitrust

28 Litigation as well as plaintiff's counsel in Attridge v. Visa USA, Inc. et al., an antitrust class

action in San Francisco Superior Court.

In conjunction with the Flehr, Hohbach patent firm, Mr. Winters conducted a 3.5 month patent antitrust trial in the case of *Systron-Donner Corp.  v. Schlumberger Corp., et al.,* which resulted in the invalidation of two pioneer patents in the field of dual slope analog to digital converters, utilized by Schlumberger for anti-competitive purposes.  He has also served as trial counsel in a number of high tech cases including *Tipton v. Information Data Systems, et al.,* involving computers and software, 99 C.A.3d 501; *Systron-Donner Corp. v. Sundstrand Data Control, Inc.* 182 U.S.P.Q.561, a patent license case involving accelerometers utilized as sensors for controlling missiles and aircraft; *National Semiconductor Corp. v. Applied Materials, Inc. et al.* and *General Instrument Corp. v. Applied Material, Inc.* involving machines for manufacturing semiconductor chips; *G. D. Searle & Co. v National Semiconductor Corp.,* involving the application of semiconductor chips to medical equipment; and *Lindberg v. Systron-Donner Corp.,* involving the fire detectors installed on Boeing 727s.

Mr. Winters was also lead counsel in the investor class action *Beermink, et al. v. Plaza Pacific Equities, Inc., et al.* in the San Francisco Superior Court and concluded a class settlement and distribution therein.

As both general counsel and trial counsel, Mr. Winters has developed hands-on expertise in applying management skills to solving business legal problems.  Mr. Winters' career is evenly balanced between serving as general counsel in technology and engineering companies and the running of his own business litigation and consulting practice.  In each position, Mr. Winters has managed by objective as follows:

- At **National Semiconductor Corporation**, Mr. Winters generated $10 Million Dollars in case revenue in a 3-year period.

1

2

3   • At **Systron-Donner Corporation**, Mr. Winters disposed of $35 Million Dollars of litigation at

4   cost while generation cash to support the legal operations.

5

6

7   • At **Kaiser Engineers** and **Kaiser Aluminum**, Mr. Winters developed skills in anticipating

8   and resolving legal problems associated with engineering and construction management.

9

10

11  **MILITARY:**          Served on active duty with the Navy as a Lieutenant (j.g.),

12              1960-1962; responsibilities included managing an accounting office and

13              training personnel.  Honorably released to inactive duty in the Naval

14              Reserve, July 13, 1962.

15  **HONORS, ACTIVITES  Professional and Community Organizations**

16  **And ASSOCIATIONS:**  State Bar of California, American Society of Corporate

17              Secretaries.  Admitted to practice before the U. S. Supreme

18              Court, United States Ninth Circuit Court of Appeals and United

19              States District Court, Northern District of California and Central

20              District of California.

21

22          **(1)    Boalt Hall**

23  Receive Best Oral Advocate Award, James Patterson McBaine Moot Court; selected to
    participate in honorary brief writing competition.

24

25

26          **(2)    Yale**

    Four-year scholarship in Directed Studies; Yale Key; Phi Gamma Delta; Dwight Hall
27  Council; Debating Club; United Nations Day Committee.

28

REPLY MEMORANDUM LEADERSHIP

Mr. Winters' biography appears in **WHO'S WHO IN AMERICAN EXECUTIVES AND PROFESSIONALS**, 1993-Present.

**PERSONAL DATE:**    Married with three children; Excellent health

Hobbies: Travel, chess, tennis, and reading.

Lingel H. Winters has litigated a variety of business and real estate cases, both as an independent practitioner and as a corporate general counsel, including as follows:

*Lindberg v. Systron-Donner Corp.,* (acquisition litigation)

*Tipton v. Information Data Systems,* 99 CA.3d 50, (acquisition litigation)

*Systron-Donner v. Schlumberger Ltd. et al.,* (patent antitrust)

*Systron-Donner Corp. v. Sundstand Data Control Inc.,* 82 U.S.P.Q. 561 (patent and licensing)

*Backus v. Plaza Pacific Equities, Inc., et al., (real estate syndication)*

*National Semiconductor Corp. v. Allendale Insurance Co.,* (business interruption)

*General Instrument Corp. v. Computervision Corp.,* (product liability)

*Delta V. v Tera Corp.,* (product liability)

*Iman v. Firestone Tire and Rubber Co.,* (toxic tort)

*a)*    References Available Upon Request

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REPLY MEMORANDUM LEADERSHIP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REPLY MEMORANDUM LEADERSHIP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REPLY MEMORANDUM LEADERSHIP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REPLY MEMORANDUM LEADERSHIP